IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 SEP 27 PM 1:47

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

PAUL FARNSWORTH a/k/a
RONNIE BRADFIELD,

        Plaintiff,

vs.

EDWARD BAXTER,

        Defendant.

No. 03-2950-B/V

---

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

On October 22, 2004, plaintiff Paul Farnsworth, a/k/a
Ronnie Bradfield, Tennessee Department of Correction ("TDOC")
prisoner number 219625, who was, at the time he commenced this
action, an inmate at the West Tennessee State Penitentiary ("WTSP")
in Henning, Tennessee, filed a motion for summary judgment,
accompanied by his own factual affidavit and a legal memorandum. On
April 14, 2005, after receiving an extension of time to respond to
the motion, the sole remaining defendant, Edward Baxter, filed a
response to the plaintiff's statement of claims (the term used by
the plaintiff to refer to his statement of undisputed facts), his
own factual affidavit, the transcript of the plaintiff's
deposition, which was taken on March 10, 2005, and his own summary

judgment motion, which the defendant urged the Court to consider in response to the plaintiff's motion.[1]

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).[2]

---

[1]   The substance of the defendant's summary judgment motion will be addressed in a separate order.

   On April 29, 2005, plaintiff submitted a document, entitled "Memorandum of Law and Facts in Support of Plaintiff's Motion," which submits additional argument and documents relevant to both summary judgment motions. However, the local rules of this Court do not contemplate the filing of a reply brief without leave of Court. Although the information submitted by the plaintiff on April 29, 2005 is unquestionably relevant to the pending motion, it is not appropriate to consider it at this time because the defendant has no right to respond to it. The only motion currently under consideration is the plaintiff's summary judgment motion, which was filed on October 22, 2004. As will be discussed infra, the only issue is whether the defendant has come forward with sufficient evidence to raise a triable issue of fact. The Court will not conclude, on the basis of evidence to which the defendant has no right to respond, that the plaintiff is entitled to judgment as a matter of law.

[2]   In this case, the motion for summary judgment was filed by the plaintiff, who will have the burden of proof in the event there is a trial.

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[3]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the

---

[3]     Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at
586 ("When the moving party has carried its burden under Rule
56(c), its opponent must do more than simply show that there is
some metaphysical doubt as to the material facts.") (footnote
omitted). The Court's function is not to weigh the evidence, judge
credibility, or in any way determine the truth of the matter,
however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry is
"whether the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law." <u>Id.</u> at 251-52.

  Moreover, Fed. R. Civ. P. 56(f) provides as follows:

   Should it appear from the affidavits of a party
opposing the motion [for summary judgment] that the party
cannot for reasons stated present by affidavit facts
essential to justify the party's opposition, the court
may refuse the application for judgment or may order a
continuance to permit affidavits to be obtained or
depositions to be taken or discovery to be had or may
make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule
56(f) has been interpreted as requiring that a party making such a
filing indicate to the district court its need for discovery, what
material facts it hopes to uncover, and why it has not previously
discovered the information." <u>Cacevic v. City of Hazel Park</u>, 226
F.3d 483, 488 (6th Cir. 2000); <u>see also</u> <u>Good v. Ohio Edison Co.</u>,
149 F.3d 413, 422 (6th Cir. 1998); <u>Plott v. General Motors Corp.</u>,
71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit
has held that, unless the nonmoving party files a Rule 56(f)
affidavit, a district court cannot decline to consider the merits

of a summary judgment motion on the ground that it is premature. <u>Wallin v. Norman</u>, 317 F.3d 558, 564 (6th Cir. 2003).

The Court's task in evaluating the plaintiff's motion is complicated by plaintiff's failure to comply with Local Rule 7.2(d)(2), which provides that,

> [o]n every motion for summary judgment, in addition to citations to appropriate legal authorities, the proponent of the motion shall designate in the accompanying memorandum by serial numbering each material fact upon which the proponent relies in support of the motion and shall affix copies of the precise portions of the record relied upon as evidence of each material fact. If the proponent contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of such assertion.

In this case, the Court will assume, as did the defendant, that the "Statement of Claims" constitutes the functional equivalent of a statement of undisputed facts. However, plaintiff has not submitted portions of the record in support of each of the statements in his "Statement of Claims." Accordingly, the plaintiff, who will have the burden of proof at trial, appears not to have satisfied his burden of properly supporting his motion in order to demonstrate the absence of a genuine issue of material fact.[4]

Farnsworth's affidavit, which was sworn to on Oct. 5, 2004, states, in pertinent part, that the plaintiff is a devout Messianic Jew who converted "on or about the year 1998-1999." The affidavit also states, on information and belief, that plaintiff's rabbi is presently living in Israel. At his deposition, the

---

[4]   As each portion of plaintiff's "Statement of Claims" is disputed by the defendant, it is not possible, for purposes of this motion, to rely on undisputed facts.

plaintiff testified that, unlike Orthodox Jews, Messianic Jews believe that Jesus Christ, who he referred to as "Yeshua," is the Messiah. Pl. Dep. at 6-7.[5] This lawsuit concerns defendant Baxter's alleged failure to locate a volunteer rabbi to conduct Messianic Jewish religious services on the Sabbath, which extends from sundown on Friday to sundown on Saturday. For purposes of this motion, the only facts that appear to be undisputed is that Messianic Jewish religious services are not offered at the WTSP and religious services for various other faith groups and denominations are offered.[6]

Defendant Baxter has submitted an affidavit, sworn to on April 7, 2005, which states in pertinent part as follows:

2.   I have been the Chaplain at West Tennessee State Penitentiary in Henning, Tennessee since August, 1994;

3.   Paul Farnsworth in the only inmate at West Tennessee State Penitentiary that informed me that he is a Messianic Jew;

4.   I was unable to locate a volunteer willing to conduct services at the prison for Mr. Farnsworth and Mr. Farnsworth did not locate a volunteer either;

5.   I performed a search on the Internet for a Messianic Jewish congregation in the area and found one. I contacted said congregation and it stated that it did not have the capacity to come to the prison and lead services for Mr. Farnsworth or visit privately with Mr. Farnsworth, but it was willing to correspond with him, if he wished to do so.

---

[5]   Plaintiff also testified that, with the exception of Orthodox Jews, other branches of Judaism, including Conservative and Reformed Jews, believe that the Messiah has come. Id. at 8-9. That statement reveals an extremely limited familiarity with traditional Judaism.

[6]   The sincerity of the plaintiff's religious beliefs are not at issue for purposes of this motion.

6.   I so informed Mr. Farnsworth; a copy of the memo to
said effect is attached hereto, marked Exhibit A;

7.   I do not work on Friday evenings or Saturdays;

. . . .

10.  Mr. Farnsworth is free to practice his religious
beliefs within the guidelines of TDOC policy;

11.  I never discriminated nor did I possess an intent
to discriminate against Mr. Farnsworth on the basis
of his religion.

Exhibit A to the Baxter Affidavit is a memorandum from Baxter to

plaintiff, dated October 8, 2004, which provides the name and

address of a Messianic Jewish congregation in Memphis and states

that

> Minister Barrett has indicated that they do not have the
> capability to lead a chapel service here at WTSP, not any
> personnel available to come for ministerial visits, at
> this time. Minister Reuben Barrett and B'rit Hadasha said
> they will be glad to correspond with you at the above
> address, if you desire to begin with this type of
> ministry from their congregation.

The Court's consideration of the plaintiff's motion is

complicated by his failure to cite any authority for the

proposition that defendant Baxter's actions violate 42 U.S.C. §

1983, and it is not even clear whether plaintiff's claims arise

under the Equal Protection Clause of the Fourteenth Amendment, the

Free Exercise Clause of the First Amendment, or some other

provision.

To the extent the complaint purports to assert an Equal

Protection claim, plaintiff has not presented admissible evidence

concerning the number of Messianic Jewish prisoners at the WTSP,

and he has not countered defendant Baxter's sworn statement that

plaintiff is the only prisoner who has requested access to

Messianic Jewish religious services.[7] Moreover, the Constitution does not require that each faith group or denomination receive equal resources, see Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972),[8] or that prison officials allocate their resources in proportion to the number of inmates in each faith group or denomination, Thompson v. Commonwealth of Ky., 712 F.2d 1078, 1081-82 (6th Cir. 1983); see also Allard v. Abramajtys, No. 94-2161, 1995 WL 293890, at *2 (6th Cir. May 12, 1995); Wilson v. Seiter, No. 88-3393, 1988 WL 114000, at *1 (6th Cir. Oct. 24, 1988).[9] In this case, unlike Cruz, the plaintiff has been afforded the opportunity to practice his Messianic Jewish faith, including the opportunity to correspond with a Messianic Jewish congregation located by the chaplain. The

---

[7]     In his deposition, the plaintiff testified that several inmates, whose names he was unable to provide, have told him they were Messianic Jews, Pl. Dep. at 10-13, and that "they approached me and asked me . . . why was the chaplain . . . not doing any services and different services that should be on the sabbath, and they said they had been talking to him and that he had been giving them a hard time," id. at 11; see also id. at 13 ("they said well, basically, you known, they're still arguing with the chaplain or whatever"). That testimony is inadmissible hearsay. See Fed. R. Evid. 802, 801(c).

[8]     The Supreme Court stated, in dicta, that

[w]e do not suggest . . . that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.

Id. at n.2.

[9]     Plaintiff's reliance on TDOC Policy Statement No. 118.01 is misplaced. On its face, 42 U.S.C. § 1983 only applies to deprivations of rights secured by the United States Constitution and federal law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999). Accordingly, TDOC policy does not create a constitutionally protected liberty interest. Taylor v. Dukes, 25 Fed. Appx. 423, 424 (6th Cir. Feb. 11, 2002); Smith v. Bradley, No. 94-5351, 1995 WL 241996, at *4 (6th Cir. Apr. 25, 1995).

plaintiff is, therefore, not entitled to summary judgment on an Equal Protection claim.

It is also conceivable that the plaintiff is attempting to assert a Free Exercise claim. "Inmates clearly retain protections afforded by the First Amendment . . . , including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' . . . The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. (citation omitted). Thus, "when a prison regulation imposes on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

The following factors are relevant to analysis of an inmate's claim that a regulation impinges on his right to free exercise:

> First, there must be a "valid, rational connection"
> between the prison regulation and the legitimate
> governmental interest put forward to justify it. . . .
> Thus, a regulation cannot be sustained where the logical
> connection between the regulation and the asserted goal
> is so remote as to render the policy arbitrary or
> irrational. Moreover, the governmental objective must be
> a legitimate or neutral one. We have found it important
> to inquire whether prison regulations restricting
> inmates' First Amendment rights operated in a neutral

fashion, without regard to the content of the expression.
. . .

> A second factor relevant in determining the
> reasonableness of a prison restriction . . . is whether
> there are alternative means of exercising the right that
> remain open to prison inmates. Where "other avenues"
> remain available for the exercise of the asserted right
> . . . , courts should be particularly conscious of the
> "measure of judicial deference owed to corrections
> officials . . . in gauging the validity of the
> regulation." . . .

> A third consideration is the impact accommodation of
> the asserted constitutional right will have on guards and
> other inmates, and on the allocation of prison resources
> generally. In the necessarily closed environment of the
> correctional institution, few changes will have no
> ramifications on the liberty of others or on the use of
> the prison's limited resources for preserving
> institutional order. When accommodation of an asserted
> right will have a significant "ripple effect" on fellow
> inmates or on prison staff, courts should be particularly
> deferential to the informed discretion of prison
> officials. . . .

> Finally, the absence of ready alternatives is
> evidence of the reasonableness of a prison regulation. .
> . . By the same token, the existence of obvious, easy
> alternatives may be evidence that the regulation is not
> reasonable, but is an "exaggerated response" to prison
> concerns. This is not a "least restrictive alternative"
> test: prison officials do not have to set up and then
> shoot down every conceivable alternative method of
> accommodating the claimant's constitutional complaint. .
> . . But if an inmate claimant can point to an alternative
> that fully accommodates the prisoner's rights at de
> minimis cost to valid penological interests, a court may
> consider that as evidence that the regulation does not
> satisfy the reasonable relationship standard.

Id. at 89-90 (citations omitted).

It is difficult to analyze the complaint using the

traditional Free Exercise framework because it does not appear that

there is a prison regulation in place that would preclude a group

of inmates, led by an outside volunteer, from participating in

Messianic Jewish religious services. TDOC Policy Statement No.

10

118.01, on which the plaintiff heavily relies, does not purport to articulate any criteria a group must satisfy before worship services will be permitted. Cf. Spies v. Voinovich, 173 F.3d 398, 404-05 (6th Cir. 1999) (prison regulation that five documented members of faith be interested in forming faith group before such groups could be formed did not violate Free Exercise clause). Moreover, for purposes of this motion, the defendant has not suggested that the failure to provide plaintiff with religious services is reasonably related to a reasonable penological interest.

In this case, defendant contends that plaintiff was not provided weekly services because no volunteer chaplain was available. Baxter Aff., ¶¶ 4-5. Defendant states he is unable personally to conduct services because he does "not work on Friday evenings or Saturdays." Id., ¶ 7. Defendant further asserts that plaintiff "is free to practice his religious beliefs within the guidelines of TDOC policy." Id., ¶ 10.

Plaintiff has not cited any authority for the proposition that prison officials are obligated to provide volunteer chaplains for every faith, however small. In Burridge v. McFaul, No. 97-3950, 1999 WL 266246 (6th Cir. Apr. 23, 1999), an unpublished decision, the Sixth Circuit affirmed a summary judgment for the defendant on a claim that prison officials failed to afford the plaintiff access to a rabbi. In so holding, the Sixth Circuit stated that "[t]he First Amendment does not require prison officials to provide religious leaders of the inmate's choice. . . . The prison minister swore in an affidavit that he had attempted to have a rabbi visit

11

Burridge." <u>Id.</u> at *2; <u>see also</u> <u>A'La v. Cobb</u>, No. 98-5257, 2000 WL 303014, at *1 (6th Cir. Mar. 14, 2000) (rejecting Free Exercise claim; "The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs[.]"); <u>Riggins-El v. Toombs</u>, No. 96-2484, 1997 WL 809980, at *2 (6th Cir. Dec. 23, 1997) (rejecting Free Exercise claim; "As a general principle, a prison is not required to employ chaplains representing every faith among the inmate population. . . . Consequently, Riggins-El's claim regarding the lack of a Muslim chaplain at IMAX is without merit."); <u>Allard</u>, No. 94-2161, 1995 WL 293890, at 2 n.1 (affirming summary judgment for defendants; "To the extent that some of the cancelled meetings involve the failure of a volunteer practitioner of Native American rituals to appear at the prison, the plaintiff offers no reason why this failure to appear should be held against the prison authorities.").[10] The plaintiff also has cited no authority for the proposition that prison officials have a responsibility to recruit religious volunteers. Accordingly, the plaintiff is not entitled to summary judgment on a Free Exercise claim.

---

[10]    In <u>Whitney v. Brown</u>, 882 F.2d 1068 (6th Cir. 1989), the Sixth Circuit held that a prison policy that prohibited Jewish inmates from congregating in weekly Sabbath services and for Passover Seder impermissibly infringed on their Free Exercise rights. In so holding, the Sixth Circuit recognized the importance of the Passover Seder and Sabbath services to traditional Jewish religious practice. <u>Id.</u> at 1073, 1076-77. That decision is factually distinguishable from the instant case in several respects. The importance of the Seder and Sabbath services were established by expert testimony, the restrictions were not supported by the testimony of prison officials, and there were religious volunteers who regularly visited Jewish inmates with the approval of prison officials. <u>Whitney</u> does not stand for the proposition that prison officials have an affirmative duty to provide religious services and to locate volunteer chaplains.

12

For all the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment.

IT IS SO ORDERED this _26F_ day of September, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 101 in case 2:03-CV-02950 was distributed by fax, mail, or direct printing on September 27, 2005 to the parties listed.

Pamela S. Lorch
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202--020

Paul Farnsworth
219625
960 State Route 212
Tiptonville, TN 38079

Edward Baxter
STATE OF TENNESSEE DEPARTMENT OF CORRECTION
Warden's Office
P.O. Box 1150
Henning, TN 38041

Honorable J. Breen
US DISTRICT COURT