IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PAUL FARNSWORTH a/k/a
RONNIE BRADFIELD,

      Plaintiff,

vs.

EDWARD BAXTER,

      Defendant.

No. 03-2950-STA-dkv

---

ORDER CORRECTING THE DOCKET
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION
OF ORDER DENYING MOTION TO STRIKE AND FOR SANCTIONS
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON THE RLUIPA CLAIM
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On November 18, 2003, Plaintiff Paul Farnsworth, a/k/a
Ronnie Bradfield, Tennessee Department of Correction ("TDOC")
prisoner number 219625, an inmate at the West Tennessee State
Penitentiary ("WTSP") in Henning, Tennessee, filed a complaint
pursuant to 42 U.S.C. § 1983 and the Religious Land Use and
Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §
2000cc et seq. (Docket Entry ("D.E.") 1.) Because Plaintiff had
filed four lawsuits that were dismissed for failure to state a
claim or as frivolous, making him ineligible to pay the civil
filing fee in installments, United States District Judge J. Daniel

Breen issued an order on March 18, 2004 directing Plaintiff to pay the $150 civil filing fee within thirty (30) days. (D.E. 6.) Plaintiff paid the filing fee on April 15, 2004.

On January 21, 2004, Plaintiff filed an amendment to his complaint as of right that withdrew every claim asserted in the original complaint except for a claim concerning a purported denial of Plaintiff's right to practice the Messianic Jewish religion. (D.E. 5.) The complaint alleges, without elaboration, that the defendants "failed to provide him with any of his religious services, especially his High Holy Days," in violation of the First Amendment and the RLUIPA. Plaintiff further contends that he has been discriminated against on the basis of his "race, 'religion', age and etc." because Christians and Muslims have more than three services a week and Plaintiff "is denied all his Judaism religious activities." The prayer for relief asks for compensatory and punitive damages. Judge Breen issued an order on August 2, 2004 that, _inter_ _alia_, dismissed every remaining claim and defendant except for a claim that WTSP Chaplain Edward Baxter refused to provide Messianic Jewish religious services on the Sabbath in violation of 42 U.S.C. § 1983. (D.E. 15.) On September 23, 2005, Judge Breen issued an order reinstating the RLUIPA claim in light of the decision in Cutter v. Wilkinson, 544 U.S. 709 (2005). (D.E. 100.)

On April 14, 2005, Defendant Baxter filed a motion for summary judgment on the § 1983 claim, supported by a statement of undisputed facts; his own factual affidavit; the transcript of the

2

deposition of Plaintiff, taken on March 10, 2005; and a legal memorandum. (D.E. 78, 79, 80, 81 & 82.) Plaintiff responded to the motion on April 29, 2005. (D.E. 83, 84, 85, 86 & 87.) In an order issued on March 30, 2006, Judge Breen granted Defendant Baxter's motion for summary judgment and dismissed Plaintiff's § 1983 claim. (D.E. 112.) That order did not affect the RLUIPA claim, which was not part of the case when the summary judgment motion was filed. (Id. at 19.)

On September 12, 2005, Defendant filed a motion to dismiss the complaint, pursuant to 42 U.S.C. § 1997e(a), in light of Jones Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005). (D.E. 96 & 97.) On October 12, 2005, Defendant filed another motion to dismiss to make clear that the previous motion encompassed the RLUIPA claim. (D.E. 104 & 105.) Plaintiff filed a response to both motions on October 26, 2005 (D.E. 107 & 108), and he supplemented his response to the October 12, 2005 motion on November 18, 2005 (D.E. 109). On August 22, 2006, Judge Breen issued an order granting Defendant's motion to dismiss the complaint pursuant to 42 U.S.C. § 1997e(a) and Jones Bey. (D.E. 139.) Judgment was entered on August 23, 2006. (D.E. 140.) On November 3, 2006, Plaintiff filed a motion asking the Court to reinstate his claims or, in the alternative, hold the case in abeyance pending the Supreme Court's decision in Jones v. Bock. (D.E. 145.) On February 21, 2007, after the issuance of the Supreme Court decision in Jones v. Bock, 127 S. Ct. 910 (2007), Judge Breen issued an order granting the motion to reinstate the complaint and vacating the judgment. (D.E. 148.)

On January 4, 2008, Defendant filed a motion for summary judgment on the RLUIPA claim, supported by a legal memorandum, a statement of undisputed facts, and the affidavit of Cile Crowder. (D.E. 171 & 172.)[1] Instead of filing a response to that motion, Plaintiff submitted a document on January 29, 2008, entitled "Notice of Filing," which was actually a motion entitled "Plaintiff Motion to Dismiss Defendant's Motion to Dismiss for Failure to Supply to Plaintiff All Exhibits and Attachment, Further Plaintiff Request Sanctions are Placed against Defendant, and the Defendant's Attorney." (D.E. 175.) Defendant filed a response in opposition to Plaintiff's motion on February 13, 2008 (D.E. 176), and Plaintiff filed a motion seeking leave to reply on February 20, 2008 (D.E. 177). Judge Breen issued an order on April 10, 2008 that, <u>inter alia</u>, granted Plaintiff leave to file a reply, denied his motion to strike the summary judgment motion and to impose sanctions, and directed Plaintiff to respond to the summary judgment motion within thirty (30) days. (D.E. 179.)

On April 14 and 16, 2008, the Clerk docketed three copies of a document submitted by Plaintiff, entitled "Notice of Interlocutory Appeal and Notice of filing 'Attached Letter' and Motion for Extension of Time to File Court Order Respond." (D.E. 181, 182 & 183.) That document consisted of an interlocutory appeal of the orders issued on April 10, 2008, and a representation that he had not received Defendant's affidavit, which was referred to in

_____

[1]     The motion also relied on the affidavit of Defendant and on Plaintiff's deposition, both of which were submitted in connection with Defendant's motion for summary judgment on the § 1983 claim. (D.E. 81 & 82.)

the summary judgment motion, and the unpublished decisions cited in Defendant's memorandum. Judge Breen issued an order on April 23, 2008 that, inter alia, advised Plaintiff that the filing of his interlocutory appeal does not extend the time for responding to the summary judgment motion, directed Defendant to mail Plaintiff another copy of the affidavit and of the unpublished decisions by certified mail and to notify the Court when the mailing had been made, and extended Plaintiff's time to respond to the summary judgment motion to thirty (30) days after the date on which Defendant's notice of service is filed. (D.E. 184.) Plaintiff was also cautioned that "[t]hat time will not be further extended without good cause." (Id. at 4 (emphasis omitted).) The case was reassigned to this judge on May 21, 2008. (D.E. 188.)[2] Plaintiff's response to the summary judgment motion, entitled "Plaintiff's Motion and Response in Opposition to Defendant's Motion for Summary Judgment, And Plaintiff's Motion for a Judgment Against Defendant Baxter And Plaintiff's Statement of Undisputed Facts and Affidavit In Support," was mailed on May 22, 2008 (D.E. 193 at 19) and docketed by the Clerk on May 27, 2008 (D.E. 193).[3] On June 13, 2008, Defendant filed a response to Plaintiff's motion for summary

---

[2]      On June 16, 2008, Plaintiff's appeal was dismissed for want of jurisdiction. Farnsworth v. Baxter, No. 08-5471 (6th Cir.) (D.E. 195).

[3]      Due to an error by the Clerk, Plaintiff's motion for an extension of time, filed on April 14, 2008 (D.E. 183), was not terminated after entry of Judge Breen's April 23, 2008 order (D.E. 184). The Court issued an order on May 22, 2008 granting Plaintiff an extension of time, until June 16, 2008, to respond to the summary judgment motion. (D.E. 191.) As Plaintiff's response was submitted within the deadline set forth in the April 23, 2008 order, this additional extension of time, which was entered in error, was unnecessary.

      The Clerk is further directed to correct the docket to reflect that Plaintiff filed a cross-motion for summary judgment on May 27, 2008.

judgment on June 13, 2008 and a reply in further support of his own summary judgment motion. (D.E. 194.)[4]

In his own motion for summary judgment, Plaintiff contends that Defendant denied him the opportunity to worship on the Jewish Sabbath because of his race. (D.E. 193 at 11.) Plaintiff's claim of race discrimination was dismissed for failure to exhaust (D.E. 15 at 4, 6-7; <u>see</u> <u>supra</u> p. 3), and the Court has stated that, at the time the motion to reinstate the complaint was granted, "the only claim remaining is that brought against Defendant Baxter, under the [RLUIPA], for failure to provide Messianic Jewish religious services." (D.E. 148 at 3; <u>see also</u> D.E. 112 at 19.) Plaintiff is not entitled to summary judgment on the race discrimination claim because that claim has been dismissed.[5] Plaintiff's motion for summary judgment is DENIED.

On June 27, 2008, Plaintiff filed a motion, entitled "Plaintiff's Motion to Re-visit his prior Motion For Sanctions against the Defendants and To Strike Defendant's Redundant Motions" (D.E. 197), and Defendant filed a response in opposition to that motion on July 16, 2008 (D.E. 199). In his April 10, 2008 order, Judge Breen explained why Defendant's motion for summary judgment is not duplicative of any previous motion:

---

[4] Defendant is reminded that the Local Rules do not contemplate the filing of reply briefs without leave of Court. The Court will, in this instance only, exercise its discretion to consider Defendant's reply.

[5] After the Supreme Court's decision in <u>Jones v. Bock</u>, Plaintiff did not move for reconsideration of the <u>sua</u> <u>sponte</u> dismissal of his race discrimination claim. In light of the length of time this action has been pending, and the substantial time that has elapsed since that decision was issued, it is far too late for Plaintiff belatedly to seek to resurrect his race discrimination claim.

After the Supreme Court's decision in <u>Cutter v. Wilkinson</u>, 544 U.S. 709 (2005), the Court issued an order on September 23, 2005 reinstating the RLUIPA claim. (D.E. 100.) Defendant then filed a motion to dismiss the complaint, pursuant to 42 U.S.C. § 1997e(a), in light of <u>Jones Bey v. Johnson</u>, 407 F.3d 801 (6th Cir. 2005). (D.E. 96-97.) The Court granted that motion on August 22, 2006 (D.E. 139), but that order and the judgment were vacated in an order issued on February 21, 2007 (D.E. 148) after the Supreme Court's decision in <u>Jones v. Bock</u>, 127 S. Ct. 910 (2007). Defendant then filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the RLUIPA claim on the grounds that the RLUIPA does not provide for damages against an individual defendant and that Defendant is entitled to qualified immunity from money damages. (D.E. 149.) On September 26, 2007, the Court denied Defendant's motion to dismiss. (D.E. 163.) Defendant then filed the pending summary judgment motion, which argues that Defendant's actions did not substantially burden Plaintiff's religious exercise. The motion is not duplicative of any motion that has been filed on the RLUIPA claim.

(D.E. 179 at 3-4.) Nothing in Plaintiff's motion for reconsideration persuades the Court that the order denying Plaintiff's motion to strike Defendant's motion for summary judgment and for sanctions was wrongly decided. Plaintiff's motion for reconsideration is DENIED.[6]

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

---

[6] On July 1, 2008, Plaintiff filed a 72-page document, entitled "Judicial Notice in Support of Plaintiff's Motion," that consisted of additional materials to be considered in opposition to the motion for summary judgment. (D.E. 198.) On July 9, 2008, Plaintiff filed a 16-page document, entitled "Notice of Filing and Judicial Notice," consisting of additional materials relevant to the motion. Both filings were received well after the June 16, 2008 deadline, and Plaintiff has provided no explanation for his failure to submit these materials in a timely manner. For that reason, these additional materials will not be considered.

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[7]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury

---

[7]     Rule 56(e)(1) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

could return a verdict for the non-moving party." <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252
("The mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient; there must be evidence
on which the jury could reasonably find for the plaintiff. The
judge's inquiry, therefore, unavoidably asks whether reasonable
jurors could find by a preponderance of the evidence that the
plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at
586 ("When the moving party has carried its burden under Rule
56(c), its opponent must do more than simply show that there is
some metaphysical doubt as to the material facts.") (footnote
omitted). The Court's function is not to weigh the evidence, judge
credibility, or in any way determine the truth of the matter,
however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry is
"whether the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law." <u>Id.</u> at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> If a party when opposing the motion shows by
> affidavit that, for specified reasons, it cannot present
> facts essential to justify its opposition, the court may:
>
> (1)   deny the motion;
>
> (2)   order a continuance to enable affidavits to be
>       obtained, depositions to be taken, or other
>       discovery to be undertaken; or
>
> (3)   issue any other just order.

"Beyond the procedural requirement of filing an affidavit, Rule
56(f) has been interpreted as requiring that a party making such a
filing indicate to the district court its need for discovery, what

material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995).

In his response to the motion for summary judgment, Plaintiff asserted, vaguely, that he "was denied a discovery process" (D.E. 193 at 1) and "denied meaningful discovery" (id. at 9), because his Request for production of documents has been objected to by Defendant" (id.). Plaintiff did not file a Rule 56(f) affidavit, and the only record citation provided refers to an order issued by Judge Breen on June 4, 2007 denying Plaintiff leave to take unspecified discovery to respond to a Rule 12(b)(6) motion. (See id. at 52; D.E. 161.) Plaintiff did not renew his request to reopen discovery after the filing of Defendant's motion for summary judgment on January 29, 2008, and he has not set forth the discovery he needs. The Court will, therefore, address the summary judgment motion on the merits.

The Court finds the following facts to be undisputed for purposes of this motion:[8]

1. The plaintiff, Paul Farnsworth, is an inmate of the TDOC, incarcerated at the WTSP. (Deposition of Paul Farnsworth ("Farnsworth Dep.") at 6.)

---

[8]    The statement of undisputed facts submitted by Defendant (D.E. 172-3) is similar to the statement of undisputed facts previously submitted in support of his motion for summary judgment on the § 1983 claim (D.E. 80). In granting summary judgment for Defendant on the § 1983 claim, Judge Breen adopted Defendant's proposed factual findings. (D.E. 112 at 7-11.) In his response to Defendant's motion for summary judgment on the RLUIPA claim, Plaintiff has responded to portions of Defendant's statement of undisputed facts (D.E. 193 at 53-54) and, therefore, those previous findings will be revisited to the extent necessary to consideration of the instant motion **only**.

2.  Mr. Farnsworth states that he is a Hebrew Israelite and a Messianic Jew. (Farnsworth Dep. at 9.)

3.  Unlike other Jews, including Orthodox Jews and Hassidic Jews, a Messianic Jew believes that Jesus Christ ("Yeshua") is the Messiah. (Farnsworth Dep. at 6-7.)[9]

4.  The Messianic Jewish service is different from other Jewish services because "Yeshua" is not part of non-Messianic Jewish service. (Farnsworth Dep. at 19.)[10]

5.  Mr. Farnsworth asked WTSP Chaplain Edward Baxter to provide Messianic Jewish services on the Sabbath. (Farnsworth Dep. at 20-22, 32-33.)[11]

6.  The Sabbath begins on Friday at sunset and ends on Saturday at sunset. (Farnsworth Dep. at 31.)

7.  Chaplain Baxter was not able to fulfill said request as he was not able to find any volunteers

---

[9]     Defendant's proposed finding, as submitted, contrasted "traditional Jews" with "Messianic Jews" (D.E. 172-3 at 1), and Plaintiff took issue with Defendant's use of the term, "traditional Jews," stating that "[t]here is no such thing as a traditional Jew, however, orthodox Jew(s)—or non messianic Jew [sic] don't believe the Messiah has came [sic], as well some hybrids type-Jews, and Hassidic types." (D.E. 193 at 53.) Neither party has cited any authority for their discussion of the beliefs of non-Messianic Jews. Nonetheless, the Court has revised the proposed finding to eliminate the word "traditional." There does not appear to be a substantive dispute here, as, for purposes of this motion, Plaintiff appears to concede that Messianic Jews believe that Jesus Christ ("Yeshua") is the Messiah, and other Jews, including Orthodox Jews and Hassidic Jews, believe otherwise.

[10]     This proposed finding, as submitted by Defendant, stated that "[t]he Messianic Jewish service is different form a traditional Jewish service because 'Yeshua' is not part of the traditional Jewish service" (D.E. 172-3 at 1), and Plaintiff again took issue with the word "traditional" but conceded that "the worship of the Messiah is not involved in none-messianic [sic] Jewish Service" (D.E. 193 at 54). The Court has revised this proposed finding to eliminate the word "traditional" and, instead, to contrast "Messianic Jewish services" with "other Jewish services."

[11]     Plaintiff asserts that "I asked for Shabbat service to be provided for the Shabbat, which is a required tenent [sic] of the faith." (D.E. 193 at 54.) In granting summary judgment for Defendant on Plaintiff's § 1983 claim, Judge Breen rejected Plaintiff's attempt to change his claim from a request for Messianic Jewish Sabbath services to generic Jewish Sabbath services. (D.E. 12 at 16 n.21.) The complaint alleges that "Plaintiff is a Messianic Jew" (Compl, "Causes of Action and claims for relief," ¶ 1, and Plaintiff's grievance, which was attached to the complaint, requested "Messianic Jewish service[s] before feast days" and "Jewish services." (D.E. 1.) Thus, Plaintiff did not specifically ask Defendant to provide a generic "Jewish" service on the Sabbath.

to lead the services. (Affidavit of Edward Baxter, sworn to on Apr. 7, 2005 ("Baxter Aff."), at ¶ 4.)[12]

8.  Mr. Farnsworth also did not locate any volunteers. (Baxter Aff., ¶ 4; Farnsworth Dep. at 26-29.)[13]

9.  Chaplain Baxter was able to locate a Messianic Jewish congregation but no one in that congregation was willing to come to the prison to conduct services. (Baxter Aff., ¶ 5; Farnsworth Dep. at 23.)[14]

10. However, a member of said congregation was willing to correspond in writing with Mr. Farnsworth. (Baxter Aff., ¶¶ 5-6 & attachment; Farnsworth Dep. at 23.)[15]

11. Chaplain Baxter himself could not lead Sabbath services as he does not work on Friday evenings or Saturdays. (Baxter Aff., ¶ 7.)[16]

12. TDOC Policy 118.01(D) requires the leadership of the chaplain or an outside volunteer for all religious group services. (Affidavit of Cile

---

[12]     Plaintiff disputes this proposed finding, stating that "Chaplain Baxter never attempted to offer me the required service. [F]urther, he has allowed other inmates to hold their Required service without a chaplain or a volunteer." (D.E. 193 at 54.) Plaintiff has cited no record evidence for his position that Defendant "never attempted to offer" him Sabbath services, and it is not clear that this statement means anything other than the proposition in the text and ¶ 7 of the Baxter Affidavit, which states that "I do not work on Friday evenings or Saturdays." Plaintiff also has not submitted any evidence to dispute Defendant's sworn statement that he has not located any volunteers to lead Messianic Jewish services. Plaintiff asserts that Defendant's search for volunteers may not have been thorough (id. at 6-7), but he has not submitted the names of any available volunteers who were overlooked by Defendant. Plaintiff's assertion that other groups are permitted to meet without the presence of the chaplain or an outside volunteer will be addressed infra.

[13]     In response, Plaintiff states only that he "is 'not' Required to Locate volunteer. (See also above answer [Id. #7] Plaintiff was discriminated against by the Chaplain." (D.E. 193 at 54.) This response does not dispute the proposition in the text, that Plaintiff is not aware of any individual who would be willing to volunteer to lead Messianic Jewish Sabbath services at the WTSP.

[14]     Plaintiff has not responded to this proposed factual finding.

[15]     Plaintiff has not responded to this proposed factual finding.

[16]     Plaintiff has not responded to this proposed factual finding.

Crowder, sworn to on Jan. 2, 2008, & attachment (D.E. 172-4).)[17]

Defendant first argues that no substantial burden has been imposed on Plaintiff's exercise of his religion. (D.E. 172 at 2-6.) The RLUIPA, 42 U.S.C. § 2000cc-1(a), provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

The Fifth Circuit has explained that

---

[17] The relevant portions of the policy statement in effect during the relevant time are as follows:

D.  Group Worship and Study:

1.  The chaplain shall schedule appropriate group worship and study opportunities to meet the needs of inmates. The groups shall be inclusive and be led by chaplains or volunteer leaders. The leaders must agree to teach the central and inclusive doctrines common to the major faith group without degrading or impacting upon the tradition of others in a negative way. Individual inmate needs or traditions specific to a particular faith group may be met by individual visits with clergy of each inmate's denomination.

2.  All groups will be led by a volunteer or supervised by the chaplain or designee. Inmates will not be placed in positions of religious leadership or authority over other inmates.

(D.E. 172-4 at 5.) Plaintiff states that the most recent version of the policy, effective March 15, 2008, has been changed in some respects (D.E. 193 at 12-13, 56-63), but the policy relied on by Defendant was in effect during the events at issue. Plaintiff has also asserted that Defendant has permitted other inmates to hold religious services that are not supervised by the chaplain or a volunteer (see id. at 7,12), but he has not submitted any admissible evidence to support that assertion. Plaintiff's affidavit to that effect (id. at 17), does not establish the basis for his information and that he has personal knowledge of the matters set forth.

> [t]he threshold inquiry under RLUIPA is whether the
> challenged governmental action substantially burdens the
> exercise of religion. The burden of proving the existence
> of a substantial interference with religious exercise
> rests on the religious adherent. . . . If such a
> substantial burden is proven, it is then up to the
> government to demonstrate that the compelling interest
> test is satisfied.

Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007) (citing 42
U.S.C. § 2000cc-2(b)); see also Koger v. Bryan, 523 F.3d 789, 796
(7th Cir. 2008); Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th
Cir. 2005).

Defendant does not dispute that Messianic Jewish Sabbath
services are a "religious exercise" within the meaning of the
RLUIPA. The term "religious exercise" "includes any exercise of
religion, whether or not compelled by, or central to, a system of
religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, the "RLUIPA
bars inquiry into whether a particular belief or practice is
'cental' to a prisoner's religion," but it "does not preclude
inquiry into the sincerity of a prisoner's professed religiosity."
Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). For purposes of
this motion, Defendant does not dispute that Plaintiff's desire to
attend Messianic Jewish religious services is genuine.[18]

The Sixth Circuit has addressed the standard for
determining whether a governmental policy or practice substantially

---

[18]     Plaintiff has submitted Defendant's answer, which states, in pertinent
part, that, "upon information and belief, it is denied that the plaintiff is a
Messianic Jew" (D.E. 193 at 39; see D.E. 25 at 1), and Defendant has made a similar
statement in response to an interrogatory propounded by Plaintiff (see D.E. 112 at
9 n.11). Notwithstanding Defendant's personal opinion, he has not prevented
Plaintiff from attending Sabbath services provided that a volunteer can be located
to lead the "group."

burdens the exercise of religion only in the zoning context,[19] where it stated as follows:

> The U.S. Supreme Court has not yet defined "substantial burden" as it applies to RLUIPA. Neither does the statute itself contain any definition of the term. The statute's legislative history, however, indicates that the "term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise." 146 Cong. Rec. S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy).

> . . . .

> In short, while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," Sherbert[ v. Verner, 374 U.S. 398, 404 (1963)]; Thomas[ v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981)], it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. See Lyng[ v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 449 (1988)]; Braunfeld[ v. Brown, 366 U.S. 599, 605-06 (1961); see also Episcopal Student Found. v. City of Ann Arbor, 341 F. Supp.2d 691, 702 (E.D. Mich. 2004) ("[C]ourts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs.").

Living Water Church of God v. Charter Township of Meridian, 258 F. App'x 729, 733-35 (6th Cir. 2007).[20] Courts in other circuits have

---

[19]    The statutory provision concerning land use regulations, found at 42 U.S.C. § 2000cc(a)(1), is, on its face, similar to the provision concerning prisoners, found at 42 U.S.C. § 2000cc-1(a)(1). See supra p. 13.

[20]    See also id. at 737 ("We decline to set a bright line test by which to 'measure' a substantial burden and, instead, look for a framework to apply to the facts before us. To the end, we find the following consideration helpful: though
                                                        (continued...)

15

applied a similar standard to RLUIPA claims brought by prisoners. Koger, 523 F.3d at 799; Warsoldier, 418 F.3d at 995-96; Adkins v. Kaspar, 393 F.3d 559, 569-70 (5th Cir. 2004); Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 988 (8th Cir. 2004).[21] The Fifth Circuit has emphasized that this test "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden on an adherent's religious exercise." Adkins, 393 F.3d at 571.

Although the parties frame the issue in this case as a denial of communal worship, that is not supported by the record. Defendant Baxter has stated that "Paul Farnsworth is the only inmate at West Tennessee State Penitentiary that informed me that he is a Messianic Jew," Baxter Aff., ¶ 3, and Plaintiff has presented no admissible evidence to the contrary.[22] Thus, the "Sabbath services" Plaintiff seeks would consist of two people:

---

[20]      (...continued)
the government action may make religious exercise more expensive or difficult, does not government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion?").

[21]      The Sixth Circuit has noted the tension between the definition of "religious exercise" in the RLUIPA and the requirement that "substantial burden" be evaluated using Free Exercise standards:

> [T]his statute requires federal courts to walk a thin line. On one hand, RLUIPA's definition of religious exercise covers most any activity that is tied to a group's religious mission, and 'RLUIPA bars inquiry into whether a particular belief or practice is "central" to [an individual's] religion.' . . . On the other hand, and in tension with this broader definition of religious exercise, Congress has cautioned that we are to interpret "substantial burden" in line with the Supreme Court's "Free Exercise" jurisprudence, which suggests that a "substantial burden" is a difficult threshold to cross.

Living Water Church of God, 258 F. App'x at 736.

[22]      See D.E. 112 at 15-16 n.21.

Plaintiff and Defendant or a volunteer rabbi. Plaintiff's assertion that other inmates are allowed to hold their services without the presence of the chaplain or a volunteer (D.E. 193 at 54) is beside the point, because Plaintiff is not complaining that he is not allowed to worship with other inmates.[23]

Defendant has not refused to permit Plaintiff to worship on the Jewish Sabbath. He has only advised Plaintiff that he is unable personally to conduct a Jewish Sabbath service because he is not scheduled to work during the time that service would occur. (Factual Findings ("FF") 6 & 11.) Plaintiff has not submitted the name of any volunteer who has been rejected, and the record does not reflect that Plaintiff made a serious attempt to locate a volunteer; instead, Plaintiff has taken the position that it is not his responsibility to locate a volunteer rabbi. See supra p. 12 & n.13.[24] At worst, Defendant has undertaken what Plaintiff contends is an insufficiently diligent search for a volunteer to conduct a

---

[23] This conclusion would not be altered if Plaintiff were permitted to broaden his claim to encompass a right to attend any type of Jewish Sabbath service. Plaintiff has argued that there were no Jewish Sabbath services of any type at the WTSP (see, e.g., D.E. 193 at 8), but he has presented no evidence of the number of observant Jews at the WTSP during the relevant time or that any inmate requested any other type of Jewish service. As previously discussed, see supra p. 11 n.11, Plaintiff's request was limited to Messianic Jewish Sabbath services.

[24] Plaintiff's apparent refusal personally to expend effort to find a volunteer willing to meet with him on the Jewish Sabbath may suggest that Sabbath services are not as important to him as he contends. See Adkins, 393 F.3d at 570 (noting that "the Supreme Court's express disapproval of any test that would require a court to divine the centrality of a religious belief does not relieve a complaining adherent of the burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion."). The fact that Sabbath services may be important to observant Jews (see D.E. 112 at 12 (citing Whitney v. Brown, 882 F.2d 1068, 1073, 1076-77 (6th Cir. 1989)) does not necessarily mean that they are important to Plaintiff. As the Court has granted summary judgment for Defendant for the reasons stated in the text, it is not necessary to resolve this issue.

Messianic Jewish sabbath service at the WTSP. (D.E. 193 at 6-7; <u>see</u> <u>supra</u> p. 12 n.12.) Under these circumstances, Defendant has not "burdened" Plaintiff's religious exercise at all.

The parties have cited few cases that are factually similar to the instant case. In <u>Adkins v. Kaspar</u>, the Fifth Circuit affirmed the dismissal of a suit, brought by a prisoner who was a member of the Yahweh Evangelical Assembly, who complained that prison officials did not permit him to attend all required religious observances:

> Turning to the instant case, the evidence shows that Adkins was and is prevented from congregating with other YEA members on many Sabbath and YEA holy days. This results, however, from a dearth of qualified outside volunteers available to go to Coffield on every one of these days, not from some rule or regulation that directly prohibits such gatherings. . . .
>
> The requirement of an outside volunteer . . . does not place a substantial burden of Adkins's religious exercise.

393 F.3d at 571. Just as in <u>Adkins</u>, Plaintiff has not been prevented from attending Sabbath services from any rule or practice in effect at the WTSP but, instead, by the lack of a volunteer to attend the service.

Likewise, in <u>Baranowski v. Hart</u>, the Fifth Circuit affirmed a summary judgment for defendants in a case brought by a Jewish inmate who complained that he was not permitted to attend religious services:

> We first consider whether Baranowski's religious exercise was substantially burdened when he was prevented from congregating with other Jewish inmates on many Sabbath and Jewish holy days. The uncontroverted summary judgment evidence shows that on the days Baranowski claims that services were not provided, no rabbi or approved religious volunteer was available to lead the

18

services. This court considered a similar claim under
RLUIPA in _Adkins_; the plaintiff in that case was
prevented from gathering with other YEA members for
various religious observances. We explained that
plaintiff and other YEA members were not prevented from
congregating by prison policy but by the dearth of clergy
and authorized volunteers. _Id._ We held that the
requirement of an outside volunteer did not place a
substantial burden on the plaintiff's religious exercise
under RLUIPA. _Id._ In light of this court's decision in
_Adkins_ and the summary judgment evidence here before us,
we are convinced that the acts of Defendants regarding
religious services have not placed a substantial burden
on Baranowski's free exercise of his Jewish faith, within
the contemplation of RLUIPA. _See id._

486 F.3d at 124-25.[25]

   Defendant's inability to locate a volunteer to worship
with Plaintiff on the Sabbath did not substantially burden his
exercise of religion.[26] Therefore, the Court GRANTS Defendant's
motion for summary judgment on the RLUIPA claim.

   Defendant also contends that he is entitled to qualified
immunity because the claimed right at issue in this case—that he
personally conduct Sabbath services on a day he is not scheduled to
work or locate Messianic Jewish volunteers to worship with
Plaintiff—is not clearly established. "Governmental officials
performing discretionary functions generally are shielded from
liability for civil damages in so far as their conduct does not
violate clearly-established statutory or constitutional rights of

---

[25]    The Texas inmates in _Baranowski_ may have had more opportunities to
attend Jewish services than did inmates at the WTSP, but the plaintiff in that case
also was able to document the number of Jewish prisoners in Texas who required
Sabbath services. _See_ 486 F.3d at 117.

[26]    By contrast, other courts have found a substantial burden where a
prison rule precluded an inmate from attending services. _See_ _Murphy_, 372 F.3d at
988.

19

which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the alleged facts show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . .
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in the specific context of the case, not as a broad general proposition.

<u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (citation omitted). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." <u>Brousseau v. Haugen</u>, 543 U.S. 194, 198 (2004); <u>see also</u> <u>Dunigan v. Noble</u>, 390 F.3d 486, 491 (6th Cir. 2004) ("In other words, where a constitutional violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the action in view of the circumstances the officer confronted assessed in light of 'clearly established' legal rules.") (citing <u>Saucier</u>, 533 U.S. at 201).

At the time Defendant Baxter advised Plaintiff that he would not personally lead a Sabbath service and undertook his search for a Messianic Jewish volunteer, there was no controlling judicial decision that imposed on him the responsibility of ensuring that a Messianic Jewish service would be held at the WTSP

on the Sabbath. Defendant is entitled to qualified immunity, and the Court GRANTS his motion for summary judgment on that basis.

For all the foregoing reasons, the complaint is DISMISSED WITH PREJUDICE. All pending motions are DENIED as moot. The Clerk is directed to enter judgment for Defendant.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that led the Court to grant Defendants' motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and 28 U.S.C. § 1915(b). However, because Plaintiff previously filed four lawsuits that were dismissed for failure to state a claim or as frivolous,[27] 28 U.S.C. § 1915(g) bars him from taking an appeal under § 1915(b). Green v. Nottingham, 90 F.3d 415, 417 (10th Cir. 1996).

Therefore, if Plaintiff files a notice of appeal, he is required to remit the entire appellate filing fee within thirty (30) days of filing that notice. If he does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that he has failed to comply with the fee requirements, and that court will dismiss his appeal. It will not be reinstated thereafter even if he does pay the filing fee. Cf. McGore, 114 F.3d at 609-10.

IT IS SO ORDERED this 11th day of September, 2008.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[27]    See Bradfield v. City of Memphis, et al., No. 96-3184-D/V (W.D. Tenn. dismissed Feb. 3, 1997) (collecting cases).